[No. 9579. Department One. August 7, 1911.]

ELIZA FIELD, *Respondent*, v. SPOKANE, PORTLAND AND SEATTLE RAILWAY COMPANY, *Appellant*.

ELLA FIELD, *Respondent*, v. SPOKANE, PORTLAND AND SEATTLE RAILWAY COMPANY, *Appellant*.[1]

NEGLIGENCE—IMPUTED NEGLIGENCE — CARRIERS — DRIVER OF STAGE. The negligence of the driver of a stage in failing to stop, look, and listen at a railroad crossing cannot be imputed to passengers for hire in a stage; and such negligence is imputed to the passenger by an instruction that the driver's failure to stop, look, and listen was the proximate cause of the injury, preventing any recovery, unless the plaintiffs themselves could have avoided the injury if the railroad company had performed its duty to signal its approach to the crossing.

[1] Reported in 117 Pac. 228.

RAILROADS — ACCIDENT AT CROSSINGS — CONCURRING NEGLIGENCE. Where an accident to passengers in a stage at a crossing is caused by the concurring negligence of the railroad company in failing to give a signal and of the stage driver in failing to stop, look, and listen, they are both jointly and severally liable, and an instruction to the contrary is prejudicial error.

Appeal from an order of the superior court for Clarke county, McMaster, J., entered November 22, 1910, granting a new trial, after the verdict of a jury rendered in favor of one of the defendants, and the granting of a nonsuit in favor of the other defendant, in consolidated actions for personal injuries sustained by passengers through the overturning of a stage. Affirmed.

*Carey & Kerr, Omar C. Spencer,* and *A. L. Miller,* for appellant, contended, among other things, that the primary cause of the accident was the negligence of the stage driver, and any negligence of the railroad company only a remote and not the proximate cause of plaintiff's injury. 29 Cyc. 491, 498; *Crampton v. Ivie Bros.,* 126 N. C. 894, 36 S. E. 351; *Schwartz v. Shull,* 45 W. Va. 405, 31 S. E. 914; *Stone v. Boston & A. R. Co.,* 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794.

*Frank E. Vaughan* and *Hayden & Langhorne,* for respondents.

FULLERTON, J.—Sometime in July, 1908, the plaintiffs left their home in Lewis county, Washington, to visit certain mineral springs in Skamania county. The route they followed took them past Carson's Landing on the Columbia river, a point they reached in the due course of their journey. From Carson's Landing to the mineral springs, the only public conveyance was a stage. The stage route, which followed the regular wagon road, crossed the tracks of the defendant railway company a short distance after leaving Carson's Landing. To the right of the wagon road, the railroad passes through a deep cut extending back for a

considerable distance, preventing an approaching train in that direction from being seen by travelers upon the wagon road. On the day in question the plaintiffs, with some sixteen other persons, boarded the stage at the landing, which then proceeded on its way to the springs. The stage was drawn by four horses, and just as the leading team reached the railway track, a train passed them coming through the cut from the right. The passing of the train so close to their front frightened the team, causing them to turn around and start back down to the road in the direction from which they came. The effect was to turn over the stage and throw the passengers out. The plaintiffs were injured, and brought actions against both the operators of the stage and the railway company to recover therefor. The actions were consolidated for the purpose of trial, and on the trial a motion for nonsuit was granted in favor of the stage company and a verdict returned in favor of the railway company. A motion for a new trial was interposed by the plaintiffs and granted by the trial court. This is an appeal by the railway company from the order granting a new trial.

The evidence of all the witnesses testifying on the subject is that the driver of the stage did not stop his team for the purpose of listening for an approaching train prior to reaching the railway crossing, and the plaintiffs' evidence tended to show, although contradicted by the defendant railway company, that the train gave no warning of its approach to the road crossing, and that it passed over the crossing at a high rate of speed.

In its charge to the jury the court gave, among others, the following instruction:

"A railroad track is a place of danger and it is the duty of anyone approaching a railroad crossing to stop, look and listen, and if a bus or wagon and team is being driven, the duty exists to stop the team and look and listen for an approaching train, and the evidence in this case is that the driver of the bus did not stop.

"If you find that the driver by stopping, looking and

listening could have heard the approach of the train but did not do so, and that his failure to stop, look and listen caused the injuries complained of, then the acts or omissions of defendant company were not the proximate cause of the injuries and there can be no recovery against the defendant company in that case, unless you find that the plaintiffs themselves could have taken steps to avoid the accident had the defendant company performed its duty with regard to such crossing."

The new trial was granted solely because of the giving of this instruction. The trial court conceived that in, giving the instruction it had imputed the negligence of the driver of the stage to the plaintiffs, who were only passengers for hire therein and had in no manner contributed to such negligence. That such is the import of the instruction cannot be gainsaid. The jury are directly charged that if they find that the driver did not stop, look, and listen for an approaching train, and that his failure to do so caused the injuries to the plaintiffs complained of, then the plaintiffs cannot recover from the railroad company, unless the jury further find that the plaintiffs themselves could have taken steps to avoid the accident had the railroad company performed its duty with regard to the crossing. This instruction plainly makes the plaintiffs responsible for the negligence of the driver of the stage. That such is not the rule has been heretofore held by this court, and is the weight of authority generally. *Shearer v. Buckley*, 31 Wash. 370, 72 Pac. 76; *Wilson v. Puget Sound Elec. R.*, 52 Wash. 522, 101 Pac. 50, 132 Am. St. 1044; *Cathey v. Seattle Elec. Co.*, 58 Wash. 176, 108 Pac. 443; *Bennett v. New Jersey R. & Trans. Co.*, 36 N. J. L. 225; *New York etc. R. Co. v. Steinbrenner*, 47 N. J. L. 161, 54 Am. Rep. 126; *Dyer v. Erie R. Co.*, 71 N. Y. 228; *Little v. Hackett*, 116 U. S. 366.

In the latter case it appeared from the record that plaintiff, who was on an excursion from his home to a neighboring town, hired a hackney-coach from a stand near a hotel at the latter place and was driven to a railroad station,

where he expected to take a train back to his home. On arriving there he found he had time before the train left to take a further drive, and directed the driver to go through a park which was near by. The driver thereupon turned the horses to go to the park, and in crossing the railroad track near the station for that purpose, the carriage was struck by the engine of a passing train, and the plaintiff received the injury complained of. The carriage belonged to a livery stable keeper and was driven by a person in his employ. It was an open carriage, with the seat of the driver about two feet above that of the persons riding. The evidence tended to show that the accident was the result of the concurring negligence of the managers of the train and of the driver of the carriage—of the managers of the train in not giving the usual signals of its approach by ringing a bell and blowing a whistle, and in not having a flagman on duty; and of the driver of the carriage in turning the horses upon the track without proper precautions to ascertain whether the train was coming. The defense was contributory negligence in driving on the track, the defendant contending that the driver was thereby negligent, and that his negligence was to be imputed to the plaintiff. The trial court charged the jury to the contrary, and the court discussing the question said:

"To determine, therefore, the correctness of the instruction of the court below—to the effect that if the plaintiff did not exercise control over the conduct of the driver at the time of the accident he is not responsible for the driver's negligence, nor precluded thereby from recovering in the action—we have only to consider whether the relation of master and servant existed between them. Plainly, that relation did not exist. The driver was the servant of his employer, the livery-stable keeper, who hired out him with horse and carriage, and was responsible for his acts. . . .

"Cases cited from the English courts, as we have seen, and numerous others decided in the courts of this country, show that the relation of master and servant does not exist be-

tween the passenger and the driver, or between the passenger and the owner. In the absence of this relation, the imputation of their negligence to the passenger, where no fault of omission or commission is chargeable to him, is against all legal rules. If their negligence could be imputed to him, it would render him equally with them responsible to third parties thereby injured, and would also preclude him from maintaining an action against the owner for injuries received by reason of it. But neither of these conclusions can be maintained; neither has the support of any adjudged cases entitled to consideration."

The appellant argues that the last clause of the instruction relieves it of the error contained in the earlier part. But the plaintiffs had no control over the driver of the stage. They had nothing to do but follow the driver's directions, and if it was the concurring negligence of the driver of the stage and the railway company that caused the injuries, the liability therefor attaches to them jointly and severally, even though the jury should find that the plaintiffs could not have avoided the accident had the railway crew given warning of the approach of the train. *East Tennessee etc. R. Co. v. Markens*, 88 Ga. 60, 13 S. E. 855.

Lastly, the appellant contends that the instruction, if error, is harmless when considered with reference to the other instructions and the evidence in the case. But we think the error prejudicial in whatever light it is viewed, and that the trial judge correctly so ruled.

DUNBAR, C. J., GOSE, and MOUNT, JJ., concur.